**REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Appellant,**

**v.**

**Sudie SPILLARS et al., Appellees.**

**No. 4078.**

Court of Civil Appeals of Texas.

Waco.

Dec. 6, 1962.

Rehearing Denied Jan. 10, 1963.

Thomas G. Nash, Jr., Dallas, for appellant.

Mac L. Bennett, Jr., Normangee, Fulbright, Crooker, Freeman, Bates & Jaworski, M. W. Parse, Jr., Houston, Boyd M. Bailey, Madisonville, for appellees.

WILSON, Justice.

Credit Life insurance governed by the provisions of Insurance Code Art. 3.53, Vernon's Annotated Texas Statutes is the subject matter of this cause. Judgment was rendered against the insurer in a non-jury trial. No findings or conclusions were filed.

A group creditors life policy was issued by appellant, effective July 1, 1960, to Farmers State Bank of Madisonville in consideration of an original single premium paid by the bank. It provided initial life insurance coverage for all eligible debtors of the bank whose names and amounts of indebtedness were then submitted by the bank to appellant. It further provided that "all new debtors of the same class or classes may likewise be insured hereunder from the date they become new debtors" of the bank.

The bank's application for the group policy specified that coverage was excluded for debtors "who are delinquent on their contracts of indebtedness on the date insurance under the policy would otherwise have become effective on such debtors."

J. D. Spillars, Sr. executed a note to the bank December 23, 1960 in renewal of a previous note secured by a chattel mortgage, and evidencing extension of an indebtedness to the bank which had existed two or three years. Spillars delivered to the president of the creditor bank a check on that bank dated December 23, 1960 in the amount of the premium for his coverage under the group policy. Spillars did not then have sufficient funds on deposit to pay the check, and the president temporarily held it in his desk. Later Spillars told the bank president he realized he was overdrawn, but would soon sell some calves and "take care of the check." Again, the president testified, "he came back in here and told me that he was fixing to sell the calves and to go ahead and write the insurance; and I wrote the insurance on January 14th, at his request." A certificate of insurance bearing that date was issued by the president as appellant's agent. On January 17, 1961 Spillars died.

Appellant urges that recovery is precluded because of failure to establish the premium for his coverage was paid while Spillars was alive. The point is

overruled. The president of the bank, as appellant's agent, issued the certificate of insurance before the death of Spillars. There is nothing in the certificate, application or policy obligating the debtor to pay or remit a premium to the insurer. This was the creditor's obligation. Ins.Code, Art. 3.50, Sec. 1(4) (b), Vernon's Ann.Tex. Stats. The application of the bank to the insurer for the group policy required that "Subsequent premiums for insurance becoming effective after effective date of the policy shall be remitted by the creditor to the company on the last business day of each calendar month after the effective date of the policy." The insurer does not contend the group policy was breached or ineffective because of the bank's delay in making remittance to it.

The bank's duty under the terms of the policy was to forward to the insurer "an itemized list of names of all debtors and the amounts of their respective indebtedness on which insurance was made effective during each such month." There was no requirement that applications be accepted or approved by the company before insurance on lives of individual debtors became effective. The established system of premium payment and method of remittance agreed to and acquiesced in by appellant was that the bank reported the names of insured debtors, their premiums and the loan amounts on or before the fifth day of each month on certificates issued during the preceding month; and that a deposit to the credit of the insurer of the total amount of premiums on such insurance was made in the Farmers' State Bank within such time. Spillars' check cleared the bank February 3rd, and appellant's account was credited with the amount of his premium February 2nd. The bank's report of insurance effective in January, sent to appellant, listed the names, debts and premiums of 22 debtors numerically by effective dates, extending from January 3 to January 27, 1961. Spillars' name was the 15th by number and effective date. The total amount of premiums payable, includ-

ing that for Spillars, was shown on the report, and was deposited to appellant's credit. The bank president testified he accepted Spillars' check in payment of the premium for the insurance.

The group policy and the statute afforded the bank, as policyholder, a grace period of 31 days for the payment of the premium for insurance on Spillars' life, and the payment was made by the bank—the only one obligated to make it—well within that period.

■ Appellant next contends Spillars was not eligible to become an insured debtor of the bank because he was not a "new" debtor, as that term is used in the policy provision first quoted above. The point insisted upon is that he was already a debtor in July, 1960 when the group policy was first issued to the bank, and was not then listed as an insured debtor; and he was thus an "old" debtor when his certificate of insurance was issued in January, 1961. We reject the definition sought. The group policy afforded coverage for all qualified debtors of the bank "whose respective names and amounts of indebtedness as of the effective date of this policy are submitted by the creditors to the Company" as being "*initially* insured" on its effective date. It then provided that while the group policy is in force "new" debtors might likewise be insured from the date they became new debtors of the bank. We think the provision meant only to authorize coverage on debtors other than those "initially insured" at any time after the effective date of the group policy; that it did not condition eligibility on contemporaneity of inception of indebtedness; and that debtors other than those "initially insured" became eligible as newly insured debtors from and after the date they became debtors.

■ Further ground for reversal is the contention that recovery was unauthorized because of failure to show Spillars was not delinquent in paying his debt to the bank, under a policy provision excluding

**376**

coverage of delinquent debtors. Spillars' only note or insured debt was dated December 23, 1960 and was payable on or before June 23, 1961, over five months after he became insured. The point is overruled.

◼ Since Art. 3.62 Insurance Code provides an insurance company shall be liable to pay the "holder" of the policy penalty and attorney fees, appellant says Spillars' estate may not recover therefor because the bank—not Spillars—was the holder of the policy. The present group policy provided the insurer would issue to the bank "for delivery to each insured debtor" an "individual certificate which shall state the amount of insurance to which he is entitled." In this case the bank relinquished its claim against the insurer to the estate, by stipulation. The contract provided insurance on the life of Spillars. Although it provided the proceeds should be paid to the bank as the statute specifies, it also required they be "applied by the creditor to reduce or extinguish" Spillars' debt. Although the bank became thereby the immediate beneficiary as loss-payee, it was such to facilitate payment by the insurer and for protection of the bank's interests; but the ultimate and direct beneficiary was the estate of Spillars as well.

"Where the statute makes insurer liable to the 'holder' of the policy, the word 'holder' refers not to custody, but to beneficial ownership, and the holder is the person who, having the right to sue, has exercised that right successfully." 46 C.J.S. Insurance § 1407, p. 724; and see Mercury Life Ins. Co. v. Mata, Tex.Civ.App., 310 S.W.2d 130, 134, writ ref.; Huddleston v. Home Life Ins. Co. of N. Y., 182 Ark. 1036, 34 S.W.2d 221; United States v. H. R. Henderson & Co., D.C.Ark., 126 F.Supp. 626. It is not necessary to distinguish Hartford Accident & Ind. Co. v. Morris, Tex.Civ. App., 233 S.W.2d 218, writ ref. n. r. e., since workmen's compensation insurance, there considered, is not within the terms of Art. 3.62. Southern Surety Co. v. Nelson, 111 Tex. 140, 229 S.W. 1113. Affirmed.